**BEGLEY, CARLIN & MANDIO, LLP**
**By: Sean M. Gresh, Esquire**
**Attorney I.D. No. 90107**
**Email:** sgresh@begleycarlin.com
**By: Hannah M. Schweizer, Esquire**
**Attorney I.D. No. 335745**
**Email:** hschweizer@begleycarlin.com
**680 Middletown Blvd.**
**Langhorne, PA 19047**
**(215)750-0110**

| | |
|---|---|
| **MARKETRI, LLC**<br>1700 Market Street<br>Suite 1005<br>Philadelphia, PA 19103<br><br>*Plaintiff,*<br><br>v.<br><br>**MSIG INSURANCE SERVICES, INC. d/b/a/ MSIG NA**<br>15 Independence Boulevard<br>P.O. Box 4602<br>Warren, NJ 07059<br><br>and<br><br>**JENNIFER MARINO**<br>5 Jonathan Drive<br>North Easton, MA 02356<br><br>*Defendants.* | **UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA**<br><br>**CIVIL ACTION NO.** |

## COMPLAINT

Plaintiff, Marketri, LLC, by and through its undersigned counsel, Begley, Carlin & Mandio, LLP, brings this action against Defendants, MSIG Insurance Services, Inc., and Jennifer Marino, and in support thereof, avers as follows:

## PARTIES

1. Plaintiff, Marketri, LLC, (hereinafter referred to as "Plaintiff") is a limited liability company duly organized and existing under the laws of Pennsylvania, with its principal place of business located at 1700 Market Street, Suite 1005, Philadelphia, Pennsylvania 19103.

2. Defendant, MSIG Insurance Services, Inc., (hereinafter referred to as "Defendant MSIG" or "MSIG") is a corporation duly organized and existing under the laws of the State of New York, with its home office located at 1251 Avenue of the Americas, 8th Floor, New York, New York 10020. MSIG maintains its U.S. operational headquarters at 15 Independence Blvd., P.O. Box 4602, Warren, New Jersey 07059.

3. Defendant, Jennifer Marino (hereinafter referred to as "Defendant Marino" or "Marino") is an adult individual who resides at 5 Jonathan Drive, North Easton, Massachusetts 02356, and was formerly employed by Plaintiff.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court has personal jurisdiction over Defendant MSIG because it transacts business in Pennsylvania, has purposefully availed itself of the privileges of conducting business in this state, and agreed in the Marketing Services Agreement that all disputes shall be resolved in Pennsylvania courts, including federal courts.

7. This Court has personal jurisdiction over Defendant Marino because her Employment Agreement states that it is made in Pennsylvania and governed by Pennsylvania law, and she engaged in conduct that caused harm to Plaintiff in Pennsylvania.

## FACTUAL ALLEGATIONS

8. On July 7, 2023, Plaintiff and Defendant MSIG entered into a Marketing Services Agreement (hereinafter referred to as "Agreement") by which Plaintiff was hired to provide marketing services, including strategy, content development, social media, email marketing, and website optimization. See Marketing Services Agreement attached hereto as **"Exhibit A."**

9. Plaintiff performed such services for Defendant MSIG through December 2024.

10. At the time, Defendant Marino was employed by Plaintiff as the Chief Marketing Officer (CMO).

11. The Agreement between Plaintiff and MSIG included a "Non-Solicitation of Employees" clause under Section 10(A), which provided:

> a. "Client agrees that during the Term and for a period of two (2) years thereafter, Client shall not directly or indirectly solicit employees, consultants or independent contractors of Marketri for Client's own benefit of for the benefit of any other person or entity, nor will Client encourage or assist others in doing so."

12. Section 10(B) under the Agreement further states that:

> a. "Parties agree that no exact measure of the damage caused to Marketri by a breach of this covenant can be determined and for the purpose of liquidating the amount of damages and not as a penalty, the Parties agree that, should Client breach this provision, the damages caused based upon the Parties' reasonable approximation of the expected loss resulting from aforesaid, will be and are fixed, liquidated and determined to be an amount equal to one and one-half (1.5) times the yearly compensation paid by Marketri to the solicited employee, consultant, or independent contractor during the fiscal year directly prior to said solicitation."

13. Additionally, Plaintiff maintains an Employee Handbook that governs its employees, including Defendant Marino.

14. Section 9.2 of the Employee Handbook, contains a Non-Compete Clause, where the employee agrees that, for the duration of their employment and for a period of one year after its termination, they will not directly or indirectly hire, attempt to hire, or assist in hiring any current or former employees or independent contractors of the employer or its affiliates who were employed within the one-year period preceding termination, nor will they, during that same time frame, solicit business from the employer's clients, persuade them to stop or reduce their business with the employer or its affiliates, or redirect clients to a competitor. See Employee Handbook attached hereto as **Exhibit "B."**

15. As a condition of her employment, Defendant Marino executed a written Employment Agreement with Plaintiff, which included a Non-Competition Clause. Under this clause, the employee agrees that, during her employment and for two years thereafter, she will not, directly or indirectly, employ, attempt to employ, or assist anyone in employing any current or former employee of the employer or its affiliates within the past two years; solicit or attempt to solicit business from any client of the employer or its affiliates; persuade any client to cease or reduce business with the employer; redirect clients to a competitor; or enter into a contractual relationship with any client of the employer to perform services similar to those she provided during her employment. See Plaintiff's Employment Agreement attached hereto as **Exhibit "C."**

16. Despite these contractual obligations, Defendant MSIG extended an offer of employment to Defendant Marino, directly violating Section 10 of the Marketing Services Agreement, Section 9.2 of the Employee Handbook, and the Non-Compete Clause in Defendant Marino's Employment Contract.

17. Defendant Marino accepted the offer and began employment with MSIG, further violating her contractual obligations.

18. Plaintiff became aware of this violation, and on January 6, 2025, Plaintiff issued a formal Cease and Desist Letter to Defendant MSIG, notifying them of their violation of the Agreement and demanding compliance. See the January 6, 2025, Demand letter addressed to Defendant MSIG attached hereto as **Exhibit "D."**

19. The letter explained that Defendant MSIG had breached Section 10(A) of the Agreement by engaging in employment-related communications with and ultimately hiring Defendant Marino within the restricted period.

20. Pursuant to Section 10(B) of the Agreement, Plaintiff is entitled to financial compensation in an amount equal to 1.5 times the yearly compensation paid by Plaintiff to Defendant Marino.

21. On January 29, 2025, Plaintiff also issued a Cease and Desist Letter to Defendant Marino, notifying her that her actions constituted a direct violation of Section 9.2 of the Employee Handbook and demanding that she immediately cease and desist from engaging in further conduct in violation of the non-competition and non-solicitation provisions. See the January 29, 2025, Demand Letter addressed to Defendant Marino attached hereto as **Exhibit "E."**

22. In response, Defendant MSIG attempted to negotiate a new two-year contract in exchange for Plaintiff, releasing all claims which Plaintiff rejected.

23. Both Defendants have refused to comply with the cease-and-desist demands.

24. Defendant Marino remains employed by Defendant MSIG in direct violation of their contractual obligations.

25. Under their agreement, Plaintiff would issue monthly invoices for services rendered to Defendant MSIG, including both its regular marketing services, additional work requested by MSIG, and costs associated with said work.

26. Plaintiff continued performing services under the agreement through December 2024.

27. In November and December 2024, Plaintiff performed a redesign of Defendant MSIG's SharePoint file sharing platform and even printed MSIG's holiday cards in addition to its contracted marketing services.

28. Plaintiff invoiced Defendant MSIG for all this work and the costs associated with it. See Marketri Invoices 2616 and 2640 attached hereto as **Exhibit "F".**

29. These invoices were presented to Defendant MSIG for payment pursuant to the Marketing Services Agreement.

30. All work described in these invoices was completed in a professional manner.

31. Defendant MSIG has lodged no complaint with the quality or timeliness of any of the work performed as described in Invoices 2616 and 2640.

**COUNT I – BREACH OF CONTRACT**
**Plaintiff v. Defendant MSIG**

32. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

33. Plaintiff and Defendant MSIG entered into a valid and enforceable Marketing Services Agreement with Plaintiff on July 7, 2023.

34. Defendant MSIG materially breached Section 10 of the Agreement by soliciting and hiring Defendant Marino within the restricted period.

35. As a direct and proximate result of Defendant MSIG's breach, Plaintiff has suffered damages, including but not limited to liquidated damages pursuant to Section 10(B) of the

Agreement, equal to 1.5 times Defendant Marino's yearly compensation, amounting to five hundred and seventy-three thousand dollars ($573,000.00).

36. Invoices 2616 and 2640 remain unpaid despite assurances from Defendant MSIG that they would be paid.

37. Both invoices are past due, and Defendant MSIG is in breach of its Marketing Services Agreement with Plaintiff.

38. The total amount which is due and owing to Plaintiff for services rendered as described in Invoices 2616 and 2640 is $75,468.00.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant MSIG, awarding liquidated damages in the amount of $573,000.00, along with real damages in the amount of $75,468.00 ($648,468.00 total) and any other relief the Court deems just an appropriate.

## COUNT II – BREACH OF CONTRACT
**Plaintiff v. Defendant Marino**

39. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

40. Defendant Marino entered into a written employment agreement with Plaintiff which prohibited her from competing with Plaintiff by accepting an offer of employment from and working for a former client of Plaintiff for a period of two (2) years after the termination of her employment with Marketri.

41. Defendant Marino is in breach of this employment agreement.

42. Section 9.2 of the Employee Handbook contains a Non-Compete and Non-Solicitation Clause restricting Defendant Marino's employment with competitors or former clients for one (1) year after termination.

43. Defendant Marino is in breach of this employment condition.

44. Defendant Marino is currently employed by Defendant MSIG, in direct violation of her contractual obligations, causing ongoing harm to Plaintiff.

45. As a direct and proximate result of Defendant Marino's breach, Plaintiff continues to suffer damages including the sharing of proprietary trade secrets and methods with a former client of Plaintiff.

46. Plaintiff requests that this Court declare defendant in breach of her contractual obligations to Plaintiff and enforce the agreements by prohibiting Defendant from remaining in employment of Defendant MSIG.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Marino, declaring her in breach of contract and ordering specific performance of the same.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

47. A declaration, order, and judgment holding that Defendants violated the terms of the Marketing Services Agreement and Defendant Marino's Employment Agreement, along with the Employee Handbook, by improperly soliciting and employing Defendant Marino in violation of the non-compete and non-solicitation clauses;

48. An order setting aside and declaring null and void Defendant Marino's employment with Defendant MSIG due to the violation of her non-compete obligations and Defendant MSIG's interference with Plaintiff's contractual rights;

49. A preliminary and permanent injunction enjoining Defendant MSIG from soliciting, hiring, or retaining employees of Plaintiff in violation of the Marketing Services Agreement and enjoining Defendant Marino from continuing her employment with Defendant MSIG;

50. An award of liquidated damages against Defendant MSIG in the amount of $573,000.00, as calculated under Section 10(B) of the Marketing Services Agreement;

51. An award of damages against Defendant MSIG in the amount of $75,468.00 for breach of the Marketing Services Agreement as compensation for services rendered to Defendant MSIG by Plaintiff.

52. An award of compensatory damages for any additional losses sustained by Plaintiff as a result of Defendants' breaches;

53. Any other relief this Court deems just and proper.

Respectfully submitted,
**BEGLEY, CARLIN & MANDIO, LLP**

By: ______________________________

Sean M. Gresh, Esq.
PA Attorney #90107
Hannah M. Schweizer, Esquire
PA Attorney #335745
680 Middletown Boulevard
Langhorne, PA 19047
Telephone:(215)750-0110
*Attorneys for Plaintiff*

***Exhibit "A"***

marketri

# MARKETING SERVICES AGREEMENT

**THIS AGREEMENT** is made as of the 7th day of July 2023, (the "Effective Date") by and between, Marketri, LLC, existing under the laws of the Commonwealth of Pennsylvania having a principal place of business at 1700 Market Street, Suite 1005, Philadelphia, Pennsylvania (hereinafter "Marketri") and MSIG NA (hereinafter "Client") (hereinafter, collectively, with Marketri, "Parties").

**WITNESSETH:**

**WHEREAS**, Marketri provides extensive marketing services and has developed certain proprietary products and systems that is made available for access by Client on the limited-basis set forth herein;

**WHEREAS**, Marketri agrees to provide Client certain marketing services as referenced and detailed herein;

**WHEREAS**, the Parties mutually desire to abide by the terms applicable to Marketri's provision, and Client's receipt, of the marketing services contemplated and described herein in further detail;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the adequacy of which is hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

**1. Scope of Work**

A. Client agrees to engage Marketri to provide marketing services set forth in detail in "Appendix" (the "Services"). Marketri represents that its performance of the Services shall be of a professional quality, shall be accomplished in compliance with all applicable laws and regulations, and in accordance with any terms and conditions set forth in this Agreement.

B. Client grants Marketri full rights and authority, including, but not limited to those referenced herein at §5(A), as may be necessary for Marketri to exercise in its effective performance of the Services.

**2. Term**

A. This Agreement shall remain in effect for the period commencing on the Effective Date, which the Parties agree shall be the date set forth above (the "Effective Date") and terminating eighteen (18) months after the Effective Date (the "Initial Term").

**3. Fees**

A. Client will be invoiced at the rate and frequency set forth in "Appendix". Client shall remit full and complete payment of all invoices on a Net 30 Day basis ("Pay Period"). In the event that Client fails to make payment within the Pay Period, and in the event said failure continues 15 days or more beyond the Pay Period, Parties agree that Marketri's obligation to provide the Services is suspended until any and all outstanding, invoiced fees are satisfied by Client in full. Parties agree that

should Client fail to make payment within the Pay Period, said failure does not constitute a material breach under the terms of this Agreement.

4. **Rights of Marketri**

A. Marketri shall have the exclusive right during the Term of this Agreement to develop, customize, maintain and manage all methods involved in their provision of Services including, but not limited to any platform for the utilization of said Services, whether internet-based or otherwise, and/or any internet presence of any kind consisting of product(s) and/or service(s) offered that are linked to Client's website.

B. During the term of this Agreement, which the Parties agree shall include the Initial Term and any Extension Term (the "Term"), and for a period of Two Years (2) following the Term, Client is prohibited from contracting with any and all employees, independent contractors, or Marketri affiliates.

5. **Relationship and Duties**

A. Marketri is retained by Client solely for the purposes set forth herein and is considered a consultant. Nothing contained herein shall constitute the relationship between the Parties as of the nature of employment, a joint venture, independent contractor as defined by the applicable tax code, or a partnership. Neither party has the authority to bind the other outside of the terms of this Agreement, and both Parties agree to refrain from making any representation, explicit or otherwise, that such authority exists. Marketri shall be solely responsible for and shall hold Client harmless for any and all claims for taxes, fees, or costs, including but not limited to withholding, income tax, FICA and worker's compensation.

6. **Ownership Rights**

A. Client hereby grants Marketri a royalty free, nonexclusive right to use Client's name, logo, trademarks and/or service marks, and all other such images for which Client grants Marketri express permission, for effectively providing the Services under the terms of this Agreement. Marketri's use of Client's name, logo or trademarks owned by Client shall be limited to the purposes described in this Agreement. Marketri agrees that ownership of such name, logo and trademarks shall remain with Client. Any copyrightable material shall be exclusively owned by Client and shall be considered a "work made for hire".

B. All right, title and interest in and to any computer code (both source and object) including, but not limited to, all interfaces, navigational devices, menus, menu structure or arrangements, help and other operational instructions and the literal and nonliteral expressions of ideas that operate, cause, create, direct, manipulate, access or otherwise affect the content and appearance provided hereunder as related to the Services including without limitation any copyrights, patents, trade secrets and other intellectual or industrial property rights therein is and shall be held by Marketri, except for the rights reserved to Client as more fully described herein.

7. **Confidential Information**

A. "Confidential Information" shall mean any confidential technical data, trade

secret, know-how or other confidential information disclosed by any party hereunder in writing, orally, or by drawing or other form and which shall be marked by the disclosing party as "Confidential" or "Proprietary". If such information is disclosed orally, or through demonstration, in order to be deemed Confidential Information, it must be specifically designated a being of a confidential nature at the time of disclosure and reduced in writing and delivered to the receiving party within 5 days of such disclosure.

B. Notwithstanding the foregoing, Confidential Information shall not include information which: (i) is known to the receiving party at the time of disclosure or becomes known to the receiving party without breach of this Agreement; (ii) is or become publicly known through no wrongful act of the receiving party or any subsidiary of the receiving party; (iii) is rightfully received from a third party without restriction on disclosure; (iv) is independently developed by the receiving party or any of its subsidiaries; (v) is furnished to any third party by the disclosing party without restriction on its disclosure; (vi) is approved for release by the prior written consent of the disclosing party; or (vii) is disclosed pursuant to judicial order, requirement of a governmental agency or by operation of law.

C. The receiving party agrees that it will not disclose any Confidential Information to any third party and will not use Confidential Information of the disclosing party for any purpose other than for the performance of the rights and obligations hereunder during the term of this Agreement and for a period of 2 years thereafter, without the prior written consent of the disclosing party. The receiving party further agrees that Confidential Information shall remain the sole property of the disclosing party and that it will take all reasonable precautions to prevent any unauthorized disclosure of Confidential Information by its employees. No license shall be granted by the disclosing party to the receiving party with respect to Confidential Information disclosed hereunder unless otherwise expressly provided herein.

D. Upon the request of the disclosing party, the receiving party will promptly return all Confidential Information furnished hereunder and all copies thereof.

E. The Parties agree that all publicity and public announcements concerning the formation and existence of this Agreement shall be jointly planned and coordinated by and among the Parties. Neither party shall disclose any of the specific terms of this Agreement to any third party without the prior written consent of the other party, which consent shall not be withheld unreasonably. Notwithstanding the foregoing, any party may disclose information concerning this Agreement as required by the rules, orders, regulations, subpoenas or directives of a court, government or governmental agency, after giving prior notice to the other party.

F. If either party breaches any of its obligations with respect to confidentiality and unauthorized use of Confidential Information hereunder, the nonbreaching party shall be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as money damages and reasonable attorney fees notwithstanding anything to the contrary contained herein.

**8. <u>Protection of Proprietary Rights</u>**

A. Client shall not assist or permit others to, decompile, decrypt, disassemble, or otherwise reverse engineer the any software, systems or any other component of the Services to

create or derive the source code thereof from the object code thereof or from any other information.

B. Each party shall use its best efforts to ensure that its employees, independent contractor agents, sales and distribution agents and other acting in concert with it or on its behalf are prohibited from taking any action otherwise prohibited to each party hereunder and to promptly notify the other party of the circumstances surrounding any such instance(s).

**9. <u>Intellectual Property Rights</u>**

A. Marketri shall comply with applicable law of the trademark, patent and copyright laws of the United States, including placing on all services and associated documentation (and any parts thereof) the copyright notices, confidentiality legends, and other labels (singularly or collectively "Proprietary Rights Notice") in the exact form(s) reasonably specified in written notice(s) and as requested by Client. Marketri shall not remove or alter any copyright or other Proprietary Rights Notice required by Client.

B. Client agrees that Marketri shall be credited as the developer of the Services hereunder.

**10. <u>Non-Solicitation of Employees</u>**

A. Client agrees that during the Term and for a period of two (2) years thereafter, Client shall not directly or indirectly solicit employees, consultants or independent contractors of Marketri for Client's own benefit of for the benefit of any other person or entity, nor will Client encourage or assist others in doing so.

B. Parties agree that no exact measure of the damage caused to Marketri by a breach of this covenant can be determined and for the purpose of liquidating the amount of damages and not as a penalty, the Parties agree that, should Client breach this provision, the damages caused based upon the Parties' reasonable approximation of the expected loss resulting from aforesaid, will be and are fixed, liquidated and determined to be an amount equal to one and one-half (1.5) times the yearly compensation paid by Marketri to the solicited employee, consultant, or independent contractor during the fiscal year directly prior to said solicitation.

**11. <u>Termination & Contract Amendments</u>**

A. Both Parties agree that this Agreement may be terminated or amended by either Party by providing ninety (90) days written notice. No termination or amendment will impact Marketri's right to receive and retain fees owed and accrued prior to either Party terminating or amending the contract.

B. In the event that either party terminates or amends this Agreement, Client and Marketri shall be entitled to receive any and all unpaid commissions and fees due up to the date of termination or amendment. In no event, however, will Marketri be obligated to refund to Client any monies paid.

C. Upon termination of this Agreement for any reason all intellectual property licenses granted to Client hereunder shall continue in full force and effect so long as Client has

provided to Marketri any and all payments required by this Agreement and all rights and licenses granted Marketri hereunder shall remain in full force and effect.

D. Upon termination of this Agreement for any reason, if requested by Marketri, company agrees to immediately return any and all Marketri materials (including without limitation the designs, scripts, storyboards, masters and any and all other materials relating to the Services) delivered by Marketri hereunder and all copies of the same, and certify by sworn statement of one of its officers that all such materials and copies have been delivered to Marketri, and, if requested by Client, Marketri shall immediately deliver to Client all documents or other property of Client.

**12. <u>Representations and Warranties</u>**

A. Marketri represents and warrants that it is the sole and exclusive owner of all rights in and to the Services, including but not limited to the intellectual property therein, and that no element of same or content and appearance provided by Marketri violates or infringes any copyright, trademark, or trade secret of any third party.

B. Marketri represents and warrants to Client that it is authorized to enter into this Agreement and that its performance thereof will not conflict with any other agreement.

C. MARKETRI REPRESENTS AND WARRANTS TO COMPANY THAT THE SERVICES PROVIDED SHALL CONFORM TO **"APPENDIX"** ATTACHED HERETO AND MADE A PART HEREOF. MARKETRI DOES NOT WARRANT AGAINST FAILURE OF PERFORMANCE DUE TO FAILURE OR DISRUPTION OF THE INTERNET AND/OR COMPANY'S WEBSITE SERVER OR CONNECTIVITY, FAILURE OF COMPANY'S COMPUTER HARDWARE OR SOFTWARE, AND/OR THIRD-PARTY SERVICES UNDER COMPANY'S CONTROL. THE FOREGOING WARRANTY IS THE ONLY WARRANTY MADE WITH RESPECT TO SERVICES PROVIDED UNDER THIS AGREEMENT AND IS A LIMITED WARRANTY. MARKETRI EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED. THE LIABILITY OF MARKETRI FOR ANY REASON AND UPON CAUSE OF ACTION WHATSOEVER SHALL BE LIMITED TO THE AMOUNT ACTUALLY PAID OR PAYABLE TO MARKETRI THROUGH COMPANY'S PROGRAM. IN NO EVENT SHALL MARKETRI BE LIABLE TO COMPANY OR ANY THIRD PARTY FOR ANY DIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR OTHER ECONOMIC LOSS (WHETHER ARISING FROM BREACH OF CONTARCT, TORT, STRICT LIABILITY) EVEN IF MARKETER HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

D. Marketri represents and warrants that it has not previously assigned, pledged, or otherwise encumbered any rights to the any proprietary information or systems in a manner that conflicts with the rights granted herein, and Marketri shall not assume any obligations or restrictions which would in any way interfere with or be inconsistent with this Agreement.

E. Client represents and warrants that it is the owner of all rights in and to any material provided by the company to Marketri for inclusion in the content and appearance, and that no element of the material supplied by the Client for the content and appearance desired by Client violates or infringes any copyright, trademark, or trade secret of any third party.

F. Client represents and warrants that it has not previously assigned, pledged, or otherwise encumbered any rights to the material supplied for the content and appearance by the Client in a manner that conflicts with the rights granted Marketer herein, and Client shall not assume

any obligations or restrictions which would in any way interfere with or be inconsistent with this Agreement.

**13. Security**

A. Client and Marketri shall require Client's members, contractors, employees, and agents using the Services to agree to follow certain security procedures including the use of passwords for access to the Client's program site, which the Parties agree to make available as a link from the entry page of the Client's program. To the extent that either party wishes to revise such security procedures during the term of this Agreement, such revisions shall be agreed upon in writing by the Parties.

**14. Indemnification**

A. Marketri hereby agrees to defend, indemnify, and hold Client, its officers, directors, agents, and employees, harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Client based on any breach by Marketri of its representations and warranties under this Agreement, and for any claims made by any third party alleging that the Services infringe its intellectual property rights.

**15. Waiver**

A. No waiver by either party of any default shall be deemed as a waiver of any prior or subsequent default of the same or other provisions of this Agreement.

**16. Force Majeure**

A. Neither party will be liable for or will be considered to be in breach of or default under this Agreement on account of, any delay or failure to perform as required by this Agreement as a result of any causes or conditions that are beyond such Party's reasonable control and that such Party is unable to overcome through the exercise of commercially reasonable diligence. If any force majeure event occurs, the affected Party will give prompt written notice to the other Party and will use commercially reasonable efforts to minimize the impact of the event.

**17. Notice and Payment**

A. Any notice required to be given under this Agreement shall be in writing and delivered personally to the other designated party at the above stated address or mailed by certified, registered, or express mail, return receipt requested, or by Federal Express.

B. Either party may change the address to which notice, or payment is to be sent by written notice to the other under any provision of this paragraph.

**18. Agreement Binding on Successors**

A. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their heirs, administrators, successors, and assigns.

**19. Assignment**

A. Neither party shall assign any rights nor obligations under this Agreement without the express written authorization of the other party, except that the sale of substantially all of the assets of either, including but not limited to the private or public sale of securities, or the acquisition by or merger into another company of either shall not be deemed an assignment which requires the other's consent, provided prompt notice of any such sale, acquisition or merger shall be given.

**20. Jurisdiction and Disputes**

A. This Agreement shall be governed in accordance with the laws of the Commonwealth of Pennsylvania. All disputes under this Agreement shall be resolved by litigation in the courts of the Commonwealth of Pennsylvania including the federal courts therein and the Parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

**21. Severability**

A. If any term, clause, or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from this Agreement.

**22. Integration**

A. This Agreement constitutes the entire understanding of the parties, and revokes and supersedes all prior agreements between the parties and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents that may be in conflict therewith.

***[The remainder of this page is intentionally left blank.]***

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

**Marketri, LLC**

By: Debra Andrews

Printed name: Debra C. Andrews

Title: Owner & President

Date: 7/7/23

**MSIG NA**

By: Johan Garth Slabbert
Johan Garth Slabbert (Jul 7, 2023 11:20 EDT)

Printed name: Johan Slabbert

Title: CEO

Date: Jul 7, 2023

# APPENDIX

## Scope of Work

### Marketing Execution & Implementation

- Marketri will provide fractional marketing execution & implementation services to MSIG NA. Ahead of each month, Marketri will put together granular project plans that will dictate how we anticipate to spend the approximate 222 hours per month and where those hours are allocated in terms of strategy, planning, management, execution and reporting. How the hours are used can be flexible to cater to the dynamic needs of the marketing plan and will be discussed and agreed upon on a monthly basis between both parties. The recommend monthly scope could include:
    - Campaign strategy + execution
    - Content development + promotion
    - Social content development + management
    - Email marketing for nurturing, engagement & outreach
    - Website optimization quick wins
    - HubSpot/CRM management and optimization (after onboarding project is completed)
    - FCMO strategic guidance
    - Recurring weekly or bi-weekly meetings to align on strategy, planning & reporting

Projects like a HubSpot onboarding, website redesign/rewrite, rewrite of collateral and materials, brand video, public relations (releases on the wire, special partnerships, sponsorship of study, etc.), employee gifts, launch events (venue, meals & entertainment), conferences (CIAB & RIMS), and the annual broker event will all be scoped separately and have separate budgets set aside from this contract.

***Note**: Scope does **not** include cost of events or event registrations, advertising expenditures, website design, development, plug-ins, third-party platforms or software (i.e. HubSpot), press release distribution, cost of influencer campaigns or promotion, stock photography or graphic design (outside of social media). If any of these items are recommended throughout the year per the plan, Marketri will gather and propose costs and these fees will be agreed upon before being invoiced from either Marketri or other parties/vendors.*

## Fees & Payment Terms

From July 7th, 2023 to December 31st, 2024 Marketri will provide marketing services to MSIG NA at a fixed fee amount of $50,000 per month which equates to 222 hours at a rate of $225 per hour. Any marketing services outside of this scope will be charged at $250 per hour, but Marketri will at no

time submit invoices for any amount other than what's stated in this section, unless otherwise agreed upon by MSIG NA and is included as an addendum to this master agreement.

Marketri invoices at the beginning of each month and our payment terms are 30 days. Our preferred method of payment is by ACH or bill.com, but you are also welcome to pay by check. If you wish to pay through a credit card or PayPal, please let us know in advance of the invoice going out on the 1st of every month by emailing billing@marketri.com. These specific types of payment will incur a 4% fee of your total invoice amount.

# MSIG NA Marketing Services Agreement_2023

Final Audit Report 2023-07-07

| | |
|---|---|
| Created: | 2023-07-07 |
| By: | Debra Andrews (marketriinfo@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAyLNolCPJtT-5tdqgP6kdhSetzhC_xpgN |

## "MSIG NA Marketing Services Agreement_2023" History

Document created by Debra Andrews (marketriinfo@gmail.com)
2023-07-07 - 2:57:05 PM GMT- IP address: 108.247.46.169

Document emailed to johan.slabbert@msig-na.com for signature
2023-07-07 - 2:57:30 PM GMT

Email viewed by johan.slabbert@msig-na.com
2023-07-07 - 3:19:54 PM GMT- IP address: 136.226.81.25

Signer johan.slabbert@msig-na.com entered name at signing as Johan Garth Slabbert
2023-07-07 - 3:20:41 PM GMT- IP address: 136.226.81.25

Document e-signed by Johan Garth Slabbert (johan.slabbert@msig-na.com)
Signature Date: 2023-07-07 - 3:20:43 PM GMT - Time Source: server- IP address: 136.226.81.25

Agreement completed.
2023-07-07 - 3:20:43 PM GMT

***Exhibit "B"***

marketri

# Employee Handbook



Philadelphia
Dallas
San Francisco
Chicago

1700 Market St., Suite 1005
Philadelphia, PA 19103
(800) 695-1356 Ext. 1

www.marketri.com
info@marketri.com
(800) 695-1356

# Section 1 - Welcome

## 1.1 Marketri's Core Values

- **Be Proactive:** Monitor the marketing plans and always be looking to tee-up the next project. We are in charge of our clients' marketing progress

- **Brand Stewards:** We always need to be looking for visual and messaging consistency for our clients online and in print.

- **Personal Connection:** Be sure to ask clients about their kids, weekends, vacations, etc. It's important / critical to have a personal connection.

- **"Can Do Attitude":** Even when a client is changing things last minute, always maintain a "can do" attitude. If there are cost considerations because of changes / inefficiencies, get with me and we can talk through how to handle. We always want clients to feel that we can come through for them.

- **Is this Working:** Be mindful of whether recommendations in the marketing plans are working. If they don't seem to be a fit and aren't getting results, recommend changing courses. Nothing is ever set in stone and we learn a lot, especially about new clients, as we implement. Our goal is to get measurable results not to check off our list.

- **Avoid the Black Hole Syndrome:** Ensure that we maintain frequent and consistent communication with our clients, so they never wonder where things stand. **We expect a 24-hour response time.** This gives the client peace-of-mind that everything is being attended to and they start to let go of the function to us.

- **Best Practices Approach:** We will consistently develop and leverage Marketri best practices for most of our clients' marketing efforts so that we perform our work in the most effective, accurate and optimal way. In doing this, we provide greater value to the client and to Marketri.

- **Technology-driven:** We always are looking for tools and technologies that can enhance our clients marketing efforts – from intelligence to outreach to measurement. Maintaining this edge is critical in today's technology-driven marketing world.

- **Best Work:** Before submitting something internally or externally to a client, ask yourself, "Is this the best possible work I can do?" Things to consider:

    - Will this work exceed expectations –did ask the right questions and deliver what was asked for and more?
    - Is it formatted in a manner that makes it easy to read, understand, print, etc.

Never submit work that isn't your best simply to check it off your list.

### 1.2 Purpose of this Handbook

This handbook has been prepared to inform new employees, freelance marketers and sub-contractors of the policies and procedures of Marketri and to establish the company's expectations. It is not all-inclusive or intended to provide strict interpretations of our policies; rather, it offers an overview of the work environment. This handbook is not a contract, expressed or implied, guarantying employment for any length of time and is not intended to induce an employee to accept employment with Marketri.

Marketri reserves the right to unilaterally revise, suspends, revoke, terminate or change any of its policies, in whole or in part, whether described within this handbook or elsewhere, in its sole discretion. If any discrepancy between this handbook and current company polic6y arises, confirm to current company policy. Every effort will be made to keep you informed of the company's policies, however we cannot guarantee that notice of revisions will be provided. Feel free to ask questions about any of the information within this handbook.

This handbook supersedes and replaces any and all personnel policies and manuals previously distributed, made available or applicable to employees.

### 1.3 At-Will Employment

Employment at Marketri is at-will. An at-will employment relationship can be terminated at any time with or without reason or notice by either the employer or the employee. This at-will relationship exists regardless of any statements by office personnel to the contrary. Only Debra Andrews is authorized to modify the at-will nature of the employment relationship, and the modification must be in writing.

## Section 2 – Workplace Commitments

### 2.4 Open-Door Policy

Marketri has an open-door policy and takes employees' concerns and problems seriously. The company values each employee and strives to provide a positive work experience. Employees are encouraged to bring any workplace concerns or problems they might have or know about to their supervisor or some other member of management.

## Section 3 – Company Policy and Procedures

### 3.1 Initial Onboarding

During the initial onboarding, the following can be expected:

a. HR policies emailed/mailed
b. Set up Marketri email address, access to client folders, time tracking and invoicing
c. LinkedIn profile to be updated to include Marketri
d. Bio and headshot to be provided for Marketri website
e. I-9 form to be filled out
f. Employee handbook to be reviewed and e-signed

### 3.2. Client and Marketri Team Communication

Frequent and consistent communication with our clients is necessary so there is never a reason for them to question where things stand. We want them to know that everything is being attended to so they start

to let go of the function to us. **Clients expect a 24-hour response time.** We are building relationships and creating trust with our clients and our team.

### 3.3 Pay Day

Paychecks are distributed every 15th and end of the month. If the pay date lands on a holiday, paychecks will be distributed on the closest business day before the holiday.

Teamwork is Marketri's time tracking system and it is important to be compliant with the company's time tracking policies.

Any changes in name, address, or telephone number should be submitted to Marketri in order to keep records current.

### 3.4 Common Property

Company property, such as computers, software, telephones must be used only to complete essential job-related functions. Employees are not permitted to download any "pirated" software, files or programs and must receive permission from Debra Andrews before installing any new software on a company computer. Files or programs stored on company computers may not be copied for personal use.

All files must be saved to Egnyte and not on the hard drive.

### 3.5 Transportation

Marketri employees are expected to provide their own car transportation to and from client meetings. Marketri reimburses employees for transportation costs that are in excess of $100 per month, which does not include car rentals (including Uber, Lyft) for routine transportation in the Tri-State area. Parking fees are always covered.

### 3.6 Time Tracking

Marketri uses Teamwork, a project management software, for time tracking which is essential in a professional services environment. All employees are responsible for accurate and timely time tracking. It is expected that time tracking be completed at the end of each day. For full-time employees, the hours must be 8 hours or more. For any given week, the total number of hours must equal 40 hours or more. Failure to accurately track time according to the company policy can result in termination with cause.

## Section 4 – General Attendance

Upon the first day of work, you will agree to a set work schedule with the main portion of hours during regular office hours – such as: 7:30 – 4:30 or 8 – 5 with an hour for a lunch break. Hours may vary depending on projects and job responsibilities. This is an entrepreneurial work environment and the workload can fluctuate from week to week. Time management and multi-tasking are imperative to keep a smooth work flow. Communication amongst the Marketri team with whom one is working and with Deb Andrews is imperative. Marketri maintains a company calendar. Appointments during regular business hours unrelated to Marketri and/or PTO days must be noted on the calendar.

# Section 5 – Paid Time Off

### 5.1 Vacations

For employees, the company provides 15 days. The Holidays not included in PTO are to include:

- Thanksgiving Day
- Day after Thanksgiving
- Christmas Eve
- Christmas Day
- New Year's Day
- Memorial Day
- Fourth of July
- Labor Day

Time off not used within the calendar year can be used in the following calendar year but must be used by March 31, 2021. All vacation accrued in 2020 must be used by March 31, 2021 regardless of start date.

# Section 6 – Work Performance

### 6.1 Expectations

Marketri expects every employee of the company to act in a professional manner. Excellent performance of job duties and responsibilities is key to this expectation. It is expected to achieve job objectives with diligence and consideration at all times. Poor job performance is unacceptable and can result in termination.

All performance is based on but not limited to:

- Quality of Work
- Attitude
- Knowledge of work
- Job Skills
- Work ethic and punctuality
- Teamwork and cooperation
- Compliance with company policy
- Improvement
- Acceptance of responsibility and constructive feedback

# Section 7 – Freelancing

Marketri discourages proactive freelancing while employed at the company and could result in termination if it is discovered and deemed to have impacted performance and/or availability.

Proactive freelancing is defined as:

- Having a second current employment position listed on Linkedin. Marketri should be the only position listed.
- Hosting and maintaining a live website that advertises marketing services to be performed by the employee or sub-contractors of the employee.
- Performing freelance engagements during normal business hours.

## Section 8 – Termination

Employment with Marketri is on an at-will basis and may be terminated voluntarily or involuntarily at any time.

Upon termination, an employee and/or subcontractor is required:

- To continue to work until the last day of scheduled employment
- To turn in all reports and paperwork required to be completed by the employee when due and no later than the last day of work
- To return all files, documents, equipment, keys, access card, software or other property belonging to Marketri that are in the employee's or sub-contractor's possession, custody or control and turn in all passwords
- To have all files backed up on Egnyte

## Section 9 – Non-Compete Clause

### 9.1 Confidential Information

- Employee acknowledges that Employee will have access to certain proprietary and confidential information of the Company and its Clients including, but not limited to, contemplated new products and services, marketing and advertising campaigns, sales projections, creative campaigns, themes and financial information, confidential methods of operations, pricing policies, marketing strategies, trade secrets (including, but not limited to, client lists, supplier lists, etc.) and other information physically in Employee's possession, hereinafter referred to as "Confidential Information".
- Employee agrees not to use, disclose or divulge, directly or indirectly, any Confidential Information during the term of this Agreement or at any time thereafter other than in connection with performing Employee's services for the Company. Employee further agrees he/she will not use any such Confidential Information, directly or indirectly, in competition with Company at any time during the term of this Agreement or at any time thereafter.

### 9.2 Non-Competition

- Employee agrees that, during the term of his/her employment and for a period of one (1) year thereafter, Employee will not directly or indirectly, whether as an investor, owner, director, officer, consultant, principal, employee, agent or otherwise, (i) employ or attempt to employ or assist anyone in employing any person who is an employee or independent Employee of the Employer or its Affiliates or was an employee or independent Employee of the Employer or its Affiliates during the one (1) year period preceding termination of Employee's employment; (ii) attempt in any manner to solicit from any client business of the type performed by the Employer or its

Affiliates or persuade any client of the Employer or its Affiliates to cease doing business or reduce the amount of business that such client has customarily done with the Employer or its Affiliates[1]; or (iii) redirect clients of Employer or its Affiliates to a competitor.

Employment with Marketri is on an at-will basis and may be terminated voluntarily or involuntarily at any time.

I have read the employee handbook and understand Marketri's policies specified in this document.

Marketri Employee

9-20-21

Date

***Exhibit "C"***

marketri

November 6, 2022

Ms. Jennifer Marino
North Easton, Massachusetts

Dear Jen:

Marketri LLC is very pleased to offer you employment! The details of your offer are below:

| | |
|---|---|
| **Effective Date:** | December 1, 2022 |
| **Position / Title:** | Fractional CMO |
| **Supervisor:** | Deb Andrews |
| **Status:** | Full-time |
| **Start Date:** | 75% of full-time from 12/1/22- 2/28/22. Full-time thereafter. |
| **Full-time Base Pay:** | $260,000 per year (full-time annual salary) |
| **Overtime Pay:** | N/A |
| **Insurance:** | The employee can participate in one of Marketri's Health Plans which are Personal Choice PPO Gold Preferred and Personal Choice PPO Silver Classic. Marketri will cover 100% of the employee's premium for the Silver Plan or apply that same amount to the Gold plan and the employee pays the difference in premium (non-tobacco user). The employee and qualified dependents are eligible beginning December 1, 2022. Marketri also has a dental plan though Delta Dental. The employee and qualified dependents are eligible beginning on the dame date. Marketri pays 100% of the employee's premium. Information regarding these plans will be sent via email. |
| **Computer and Software** | A laptop will be supplied by Marketri. |

{00955122/}

| | |
|---|---|
| **401K** | Marketri has a 401K profit sharing plan. You are eligible to participate beginning December 1, 2022 |
| **Full-Time PTO / Wellness:** | 20 days PTO per year; 2 floating holidays. |
| **Other:** | Commission of 5% of first year revenues generated and received from new clients originated from employee's own contacts and networking. |

This is an exempt position and overtime may be required; Limited travel to clients and for Marketri in-person meetings may be necessary on occasion. Holidays for 2021 include.

- Thanksgiving Day
- Day after Thanksgiving
- Christmas Eve
- Christmas Day
- New Year's Eve
- New Year's Day
- Memorial Day
- Fourth of July
- Labor Day

The term of employment is at the will of the parties and either party may terminate the employment relationship at any time.

You agree to the following terms with respect to non-competition and the protection and nondisclosure of Company information and data:

Confidential Information. Employee acknowledges that Employee will have access to certain proprietary and confidential information of the Company and its Clients including, but not limited to, contemplated new products and services, marketing and advertising campaigns, sales projections, creative campaigns, themes and financial information, confidential methods of operations, pricing policies, marketing strategies, trade secrets (including, but not limited to, client lists, supplier lists, etc.) and other information physically in Employee's possession, hereinafter referred to as "Confidential Information". Employee agrees not to use, disclose or divulge, directly or indirectly, and Confidential Information during the term of this Agreement or at any time thereafter other than in connection with performing Employee's services for the Company. Employee further agrees he will not use any such Confidential Information, directly or indirectly, in competition with Company at any time during the term of this Agreement or at any time thereafter.

Non-Competition. Employee agrees that, during the term of her employment and for a period of two (2) years thereafter, Employee will not directly or indirectly, whether as an investor, owner, director, officer, consultant, principal, employee, agent or otherwise, (i) employ or attempt to employ or assist anyone in employing any person who is an employee or independent Employee of the Employer or its Affiliates or was an employee or independent Employee of the Employer or its Affiliates during the two (2) year period preceding termination of Employee's employment; (ii) attempt in any manner to solicit from any client business of the type performed by the Employer or its Affiliates or persuade any client of the Employer or its Affiliates to cease doing business or reduce the amount of business that such client has customarily done with the Employer or its Affiliates[1]; (iii) redirect clients of Employer or its Affiliates to a competitor; or (iv) enter into a contractual relationship with a client of Employer to perform the type of services, or services similar in nature to that which was provided by Employee to Employer during Employee's term of employment.

This agreement is made in the Commonwealth of Pennsylvania and is to be construed and enforced according to its laws.

Please acknowledge your acceptance of this offer and agreement to its terms initialing and signing this letter and returning the complete letter to me.

I look forward to working with you and having you as a part of the Marketri team!

Sincerely,

Debra Andrews

Debra Andrews

President, Owner

**Marketri LLC**

Accepted and Agreed: Date: 11/6/2022

Jennifer Marino

DocuSigned by:
Jen Marino
2553D33CEFBE4EA

[1] Note that this excludes clients originated from employee.

{00955122/}

***Exhibit "D"***

JEFFREY P. GARTON
DOUGLAS C. MALONEY
THOMAS J. PROFY, IV*†
FRANCIS X. DILLON
JOHN A. TORRENTE*
STEVEN M. JONES
MICHAEL J. MEGINNISS
BREANDAN Q. NEMEC*
BRENDAN M. CALLAHAN*
BRADLEY R. CORNETT*
SEAN M. GRESH
BRYCE H. McGUIGAN*
TRACY L. CASSEL-BROPHY*
CHRIS LITTLE SIMCOX*
BRENDAN G. CORRIGAN^
KIMBERLY N. BARRON
CHLOE M. BOUDAZIN
CHELSEY CROCKER JACKMAN
MARISA M. PERINI
HANNAH M. SCHWEIZER

*Member of PA & NJ Bars
†Master of Laws (Taxation)
^Member of PA & NY Bars

BEGLEY, CARLIN & MANDIO, LLP
BC&M
EST. 1933
ATTORNEYS AT LAW

680 MIDDLETOWN BOULEVARD
P.O. BOX 308
LANGHORNE, PENNSYLVANIA 19047-0308
TELEPHONE: 215.750.0110
FAX: 215.750.0954

OF COUNSEL

HON. ROBERT O. BALDI (RET.)
-Mediation and Arbitration

SCOTT A. PETRI
FRANK A. FARRY
ALLEN W. TOADVINE
TRACY P. HUNT
PAMELA A. VAN BLUNK*
KATHARINE J. WEEDER*
MARC I. RICKLES*

NEW HOPE OFFICE
123 W. BRIDGE STREET
NEW HOPE, PA 18938
215.862.0701

SEAN M. GRESH, ESQUIRE
sgresh@begleycarlin.com

January 6, 2025

*VIA CERTIFIED MAIL*
*and EMAIL - pjmck31@gmail.com*
*and EMAIL - Peter.McKenna@msig-na.com*
MSIG USA
1251 Avenue of the Americas, 8th Floor
New York, NY 10020
ATTN: Peter McKenna, CEO

*RE: Cease and Desist*

Dear Mr. McKenna

Please be advised that our firm represents Marketri, LLC ("Marketri"). Reference is made to the enclosed Marketing Services Agreement ("Marketing Agreement") dated July 7, 2023, and duly executed by Debra Andrews, Owner and President of Marketri, and Jonah Slabbert, then-CEO of MSIG NA ("MSIG").

Since the date of execution of the Marketing Agreement, Marketri has tendered services on behalf of MSIG. Further, as of the date of this correspondence, Marketri representatives are not in possession of any correspondence on behalf of MSIG alleging a default of Marketri's behalf. As you are aware, MSIG has extended an offer of employment to Jen Marino, who currently serves as Marketri's Chief Marketing Officer.

Section Ten of the Marketing Agreement, entitled Non-Solicitation of Employees, specifically prohibits MSIG from soliciting any Marketri Employee during the term of the Marketing Agreement and for two years thereafter. Specifically, the pertinent section states: "[MSIG] agrees that during the Term and for a period of two (2) years thereafter, Client shall not directly or indirectly solicit employees, consultants or independent contractors of Marketri for Client's own benefit of for the benefit of any other person or entity, nor will Client encourage or assist others in doing so." Further, violation of this provision is detailed in Section 10B., wherein it holds that "Parties agree that no exact measure of the damage caused to Marketri by a breach of this covenant can be determined and for the purpose of liquidating the amount of damages and

not as a penalty, the Parties agree that, should Client breach this provision, the damages caused based upon the Parties' reasonable approximation of the expected loss resulting from aforesaid, will be and are fixed, liquidated and determined to be an amount equal to one and one-half (1.5) times the yearly compensation paid by Marketri to the solicited employee, consultant, or independent contractor during the fiscal year directly prior to said solicitation."

Employment communication and tendering an offer of employment to a Marketri executive within the term of the Marketing Agreement is in direct contravention of the terms mutually agreed upon by both parties, entitling Marketri to financial compensation as detailed in the above-cited provisions. We commend you to provide the foregoing correspondence to your legal counsel for review and discussion. Failure to provide a response within fourteen (14) days will result in Marketri availing itself to all legal remedies it may possess.

Please be guided accordingly.

Very truly yours,

Sean M. Gresh

cc: Michael J. Meginniss, Esquire *(via email – mmeginniss@begleycarlin.com)*

marketri

# MARKETING SERVICES AGREEMENT

**THIS AGREEMENT** is made as of the 7th day of July 2023, (the "Effective Date") by and between, Marketri, LLC, existing under the laws of the Commonwealth of Pennsylvania having a principal place of business at 1700 Market Street, Suite 1005, Philadelphia, Pennsylvania (hereinafter "Marketri") and MSIG NA (hereinafter "Client") (hereinafter, collectively, with Marketri, "Parties").

**WITNESSETH:**

**WHEREAS**, Marketri provides extensive marketing services and has developed certain proprietary products and systems that is made available for access by Client on the limited-basis set forth herein;

**WHEREAS**, Marketri agrees to provide Client certain marketing services as referenced and detailed herein;

**WHEREAS**, the Parties mutually desire to abide by the terms applicable to Marketri's provision, and Client's receipt, of the marketing services contemplated and described herein in further detail;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the adequacy of which is hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. **Scope of Work**

A. Client agrees to engage Marketri to provide marketing services set forth in detail in "Appendix" (the "Services"). Marketri represents that its performance of the Services shall be of a professional quality, shall be accomplished in compliance with all applicable laws and regulations, and in accordance with any terms and conditions set forth in this Agreement.

B. Client grants Marketri full rights and authority, including, but not limited to those referenced herein at §5(A), as may be necessary for Marketri to exercise in its effective performance of the Services.

2. **Term**

A. This Agreement shall remain in effect for the period commencing on the Effective Date, which the Parties agree shall be the date set forth above (the "Effective Date") and terminating eighteen (18) months after the Effective Date (the "Initial Term").

3. **Fees**

A. Client will be invoiced at the rate and frequency set forth in "Appendix". Client shall remit full and complete payment of all invoices on a Net 30 Day basis ("Pay Period"). In the event that Client fails to make payment within the Pay Period, and in the event said failure continues 15 days or more beyond the Pay Period, Parties agree that Marketri's obligation to provide the Services is suspended until any and all outstanding, invoiced fees are satisfied by Client in full. Parties agree that

should Client fail to make payment within the Pay Period, said failure does not constitute a material breach under the terms of this Agreement.

4. **Rights of Marketri**

A. Marketri shall have the exclusive right during the Term of this Agreement to develop, customize, maintain and manage all methods involved in their provision of Services including, but not limited to any platform for the utilization of said Services, whether internet-based or otherwise, and/or any internet presence of any kind consisting of product(s) and/or service(s) offered that are linked to Client's website.

B. During the term of this Agreement, which the Parties agree shall include the Initial Term and any Extension Term (the "Term"), and for a period of Two Years (2) following the Term, Client is prohibited from contracting with any and all employees, independent contractors, or Marketri affiliates.

5. **Relationship and Duties**

A. Marketri is retained by Client solely for the purposes set forth herein and is considered a consultant. Nothing contained herein shall constitute the relationship between the Parties as of the nature of employment, a joint venture, independent contractor as defined by the applicable tax code, or a partnership. Neither party has the authority to bind the other outside of the terms of this Agreement, and both Parties agree to refrain from making any representation, explicit or otherwise, that such authority exists. Marketri shall be solely responsible for and shall hold Client harmless for any and all claims for taxes, fees, or costs, including but not limited to withholding, income tax, FICA and worker's compensation.

6. **Ownership Rights**

A. Client hereby grants Marketri a royalty free, nonexclusive right to use Client's name, logo, trademarks and/or service marks, and all other such images for which Client grants Marketri express permission, for effectively providing the Services under the terms of this Agreement. Marketri's use of Client's name, logo or trademarks owned by Client shall be limited to the purposes described in this Agreement. Marketri agrees that ownership of such name, logo and trademarks shall remain with Client. Any copyrightable material shall be exclusively owned by Client and shall be considered a "work made for hire".

B. All right, title and interest in and to any computer code (both source and object) including, but not limited to, all interfaces, navigational devices, menus, menu structure or arrangements, help and other operational instructions and the literal and nonliteral expressions of ideas that operate, cause, create, direct, manipulate, access or otherwise affect the content and appearance provided hereunder as related to the Services including without limitation any copyrights, patents, trade secrets and other intellectual or industrial property rights therein is and shall be held by Marketri, except for the rights reserved to Client as more fully described herein.

7. **Confidential Information**

A. "Confidential Information" shall mean any confidential technical data, trade

secret, know-how or other confidential information disclosed by any party hereunder in writing, orally, or by drawing or other form and which shall be marked by the disclosing party as "Confidential" or "Proprietary". If such information is disclosed orally, or through demonstration, in order to be deemed Confidential Information, it must be specifically designated a being of a confidential nature at the time of disclosure and reduced in writing and delivered to the receiving party within 5 days of such disclosure.

B. Notwithstanding the foregoing, Confidential Information shall not include information which: (i) is known to the receiving party at the time of disclosure or becomes known to the receiving party without breach of this Agreement; (ii) is or become publicly known through no wrongful act of the receiving party or any subsidiary of the receiving party; (iii) is rightfully received from a third party without restriction on disclosure; (iv) is independently developed by the receiving party or any of its subsidiaries; (v) is furnished to any third party by the disclosing party without restriction on its disclosure; (vi) is approved for release by the prior written consent of the disclosing party; or (vii) is disclosed pursuant to judicial order, requirement of a governmental agency or by operation of law.

C. The receiving party agrees that it will not disclose any Confidential Information to any third party and will not use Confidential Information of the disclosing party for any purpose other than for the performance of the rights and obligations hereunder during the term of this Agreement and for a period of 2 years thereafter, without the prior written consent of the disclosing party. The receiving party further agrees that Confidential Information shall remain the sole property of the disclosing party and that it will take all reasonable precautions to prevent any unauthorized disclosure of Confidential Information by its employees. No license shall be granted by the disclosing party to the receiving party with respect to Confidential Information disclosed hereunder unless otherwise expressly provided herein.

D. Upon the request of the disclosing party, the receiving party will promptly return all Confidential Information furnished hereunder and all copies thereof.

E. The Parties agree that all publicity and public announcements concerning the formation and existence of this Agreement shall be jointly planned and coordinated by and among the Parties. Neither party shall disclose any of the specific terms of this Agreement to any third party without the prior written consent of the other party, which consent shall not be withheld unreasonably. Notwithstanding the foregoing, any party may disclose information concerning this Agreement as required by the rules, orders, regulations, subpoenas or directives of a court, government or governmental agency, after giving prior notice to the other party.

F. If either party breaches any of its obligations with respect to confidentiality and unauthorized use of Confidential Information hereunder, the nonbreaching party shall be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as money damages and reasonable attorney fees notwithstanding anything to the contrary contained herein.

**8. <u>Protection of Proprietary Rights</u>**

A. Client shall not assist or permit others to, decompile, decrypt, disassemble, or otherwise reverse engineer the any software, systems or any other component of the Services to

create or derive the source code thereof from the object code thereof or from any other information.

B. Each party shall use its best efforts to ensure that its employees, independent contractor agents, sales and distribution agents and other acting in concert with it or on its behalf are prohibited from taking any action otherwise prohibited to each party hereunder and to promptly notify the other party of the circumstances surrounding any such instance(s).

9. **Intellectual Property Rights**

A. Marketri shall comply with applicable law of the trademark, patent and copyright laws of the United States, including placing on all services and associated documentation (and any parts thereof) the copyright notices, confidentiality legends, and other labels (singularly or collectively "Proprietary Rights Notice") in the exact form(s) reasonably specified in written notice(s) and as requested by Client. Marketri shall not remove or alter any copyright or other Proprietary Rights Notice required by Client.

B. Client agrees that Marketri shall be credited as the developer of the Services hereunder.

10. **Non-Solicitation of Employees**

A. Client agrees that during the Term and for a period of two (2) years thereafter, Client shall not directly or indirectly solicit employees, consultants or independent contractors of Marketri for Client's own benefit of for the benefit of any other person or entity, nor will Client encourage or assist others in doing so.

B. Parties agree that no exact measure of the damage caused to Marketri by a breach of this covenant can be determined and for the purpose of liquidating the amount of damages and not as a penalty, the Parties agree that, should Client breach this provision, the damages caused based upon the Parties' reasonable approximation of the expected loss resulting from aforesaid, will be and are fixed, liquidated and determined to be an amount equal to one and one-half (1.5) times the yearly compensation paid by Marketri to the solicited employee, consultant, or independent contractor during the fiscal year directly prior to said solicitation.

11. **Termination & Contract Amendments**

A. Both Parties agree that this Agreement may be terminated or amended by either Party by providing ninety (90) days written notice. No termination or amendment will impact Marketri's right to receive and retain fees owed and accrued prior to either Party terminating or amending the contract.

B. In the event that either party terminates or amends this Agreement, Client and Marketri shall be entitled to receive any and all unpaid commissions and fees due up to the date of termination or amendment. In no event, however, will Marketri be obligated to refund to Client any monies paid.

C. Upon termination of this Agreement for any reason all intellectual property licenses granted to Client hereunder shall continue in full force and effect so long as Client has

provided to Marketri any and all payments required by this Agreement and all rights and licenses granted Marketri hereunder shall remain in full force and effect.

D. Upon termination of this Agreement for any reason, if requested by Marketri, company agrees to immediately return any and all Marketri materials (including without limitation the designs, scripts, storyboards, masters and any and all other materials relating to the Services) delivered by Marketri hereunder and all copies of the same, and certify by sworn statement of one of its officers that all such materials and copies have been delivered to Marketri, and, if requested by Client, Marketri shall immediately deliver to Client all documents or other property of Client.

12. <u>**Representations and Warranties**</u>

A. Marketri represents and warrants that it is the sole and exclusive owner of all rights in and to the Services, including but not limited to the intellectual property therein, and that no element of same or content and appearance provided by Marketri violates or infringes any copyright, trademark, or trade secret of any third party.

B. Marketri represents and warrants to Client that it is authorized to enter into this Agreement and that its performance thereof will not conflict with any other agreement.

C. MARKETRI REPRESENTS AND WARRANTS TO COMPANY THAT THE SERVICES PROVIDED SHALL CONFORM TO **"APPENDIX"** ATTACHED HERETO AND MADE A PART HEREOF. MARKETRI DOES NOT WARRANT AGAINST FAILURE OF PERFORMANCE DUE TO FAILURE OR DISRUPTION OF THE INTERNET AND/OR COMPANY'S WEBSITE SERVER OR CONNECTIVITY, FAILURE OF COMPANY'S COMPUTER HARDWARE OR SOFTWARE, AND/OR THIRD-PARTY SERVICES UNDER COMPANY'S CONTROL. THE FOREGOING WARRANTY IS THE ONLY WARRANTY MADE WITH RESPECT TO SERVICES PROVIDED UNDER THIS AGREEMENT AND IS A LIMITED WARRANTY. MARKETRI EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED. THE LIABILITY OF MARKETRI FOR ANY REASON AND UPON CAUSE OF ACTION WHATSOEVER SHALL BE LIMITED TO THE AMOUNT ACTUALLY PAID OR PAYABLE TO MARKETRI THROUGH COMPANY'S PROGRAM. IN NO EVENT SHALL MARKETRI BE LIABLE TO COMPANY OR ANY THIRD PARTY FOR ANY DIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR OTHER ECONOMIC LOSS (WHETHER ARISING FROM BREACH OF CONTARCT, TORT, STRICT LIABILITY) EVEN IF MARKETER HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

D. Marketri represents and warrants that it has not previously assigned, pledged, or otherwise encumbered any rights to the any proprietary information or systems in a manner that conflicts with the rights granted herein, and Marketri shall not assume any obligations or restrictions which would in any way interfere with or be inconsistent with this Agreement.

E. Client represents and warrants that it is the owner of all rights in and to any material provided by the company to Marketri for inclusion in the content and appearance, and that no element of the material supplied by the Client for the content and appearance desired by Client violates or infringes any copyright, trademark, or trade secret of any third party.

F. Client represents and warrants that it has not previously assigned, pledged, or otherwise encumbered any rights to the material supplied for the content and appearance by the Client in a manner that conflicts with the rights granted Marketer herein, and Client shall not assume

any obligations or restrictions which would in any way interfere with or be inconsistent with this Agreement.

**13. Security**

A. Client and Marketri shall require Client's members, contractors, employees, and agents using the Services to agree to follow certain security procedures including the use of passwords for access to the Client's program site, which the Parties agree to make available as a link from the entry page of the Client's program. To the extent that either party wishes to revise such security procedures during the term of this Agreement, such revisions shall be agreed upon in writing by the Parties.

**14. Indemnification**

A. Marketri hereby agrees to defend, indemnify, and hold Client, its officers, directors, agents, and employees, harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Client based on any breach by Marketri of its representations and warranties under this Agreement, and for any claims made by any third party alleging that the Services infringe its intellectual property rights.

**15. Waiver**

A. No waiver by either party of any default shall be deemed as a waiver of any prior or subsequent default of the same or other provisions of this Agreement.

**16. Force Majeure**

A. Neither party will be liable for or will be considered to be in breach of or default under this Agreement on account of, any delay or failure to perform as required by this Agreement as a result of any causes or conditions that are beyond such Party's reasonable control and that such Party is unable to overcome through the exercise of commercially reasonable diligence. If any force majeure event occurs, the affected Party will give prompt written notice to the other Party and will use commercially reasonable efforts to minimize the impact of the event.

**17. Notice and Payment**

A. Any notice required to be given under this Agreement shall be in writing and delivered personally to the other designated party at the above stated address or mailed by certified, registered, or express mail, return receipt requested, or by Federal Express.

B. Either party may change the address to which notice, or payment is to be sent by written notice to the other under any provision of this paragraph.

**18. Agreement Binding on Successors**

A. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their heirs, administrators, successors, and assigns.

**19. Assignment**

A. Neither party shall assign any rights nor obligations under this Agreement without the express written authorization of the other party, except that the sale of substantially all of the assets of either, including but not limited to the private or public sale of securities, or the acquisition by or merger into another company of either shall not be deemed an assignment which requires the other's consent, provided prompt notice of any such sale, acquisition or merger shall be given.

**20. Jurisdiction and Disputes**

A. This Agreement shall be governed in accordance with the laws of the Commonwealth of Pennsylvania. All disputes under this Agreement shall be resolved by litigation in the courts of the Commonwealth of Pennsylvania including the federal courts therein and the Parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

**21. Severability**

A. If any term, clause, or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from this Agreement.

**22. Integration**

A. This Agreement constitutes the entire understanding of the parties, and revokes and supersedes all prior agreements between the parties and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents that may be in conflict therewith.

***[The remainder of this page is intentionally left blank.]***

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

**Marketri, LLC**

By: Debra Andrews

Printed name: Debra C. Andrews

Title: Owner & President

Date: 7/7/23

**MSIG NA**

Johan Garth Slabbert

By: Johan Garth Slabbert (Jul 7, 2023 11:20 EDT)

Printed name: Johan Slabbert

Title: CEO

Date: Jul 7, 2023

# APPENDIX

## Scope of Work

### Marketing Execution & Implementation

- Marketri will provide fractional marketing execution & implementation services to MSIG NA. Ahead of each month, Marketri will put together granular project plans that will dictate how we anticipate to spend the approximate 222 hours per month and where those hours are allocated in terms of strategy, planning, management, execution and reporting. How the hours are used can be flexible to cater to the dynamic needs of the marketing plan and will be discussed and agreed upon on a monthly basis between both parties. The recommend monthly scope could include:
    - Campaign strategy + execution
    - Content development + promotion
    - Social content development + management
    - Email marketing for nurturing, engagement & outreach
    - Website optimization quick wins
    - HubSpot/CRM management and optimization (after onboarding project is completed)
    - FCMO strategic guidance
    - Recurring weekly or bi-weekly meetings to align on strategy, planning & reporting

Projects like a HubSpot onboarding, website redesign/rewrite, rewrite of collateral and materials, brand video, public relations (releases on the wire, special partnerships, sponsorship of study, etc.), employee gifts, launch events (venue, meals & entertainment), conferences (CIAB & RIMS), and the annual broker event will all be scoped separately and have separate budgets set aside from this contract.

*__Note__: Scope does **not** include cost of events or event registrations, advertising expenditures, website design, development, plug-ins, third-party platforms or software (i.e. HubSpot), press release distribution, cost of influencer campaigns or promotion, stock photography or graphic design (outside of social media). If any of these items are recommended throughout the year per the plan, Marketri will gather and propose costs and these fees will be agreed upon before being invoiced from either Marketri or other parties/vendors.*

## Fees & Payment Terms

From July 7th, 2023 to December 31st, 2024 Marketri will provide marketing services to MSIG NA at a fixed fee amount of $50,000 per month which equates to 222 hours at a rate of $225 per hour. Any marketing services outside of this scope will be charged at $250 per hour, but Marketri will at no

time submit invoices for any amount other than what's stated in this section, unless otherwise agreed upon by MSIG NA and is included as an addendum to this master agreement.

Marketri invoices at the beginning of each month and our payment terms are 30 days. Our preferred method of payment is by ACH or bill.com, but you are also welcome to pay by check. If you wish to pay through a credit card or PayPal, please let us know in advance of the invoice going out on the 1st of every month by emailing billing@marketri.com. These specific types of payment will incur a 4% fee of your total invoice amount.

# MSIG NA Marketing Services Agreement_2023

Final Audit Report 2023-07-07

| | |
|---|---|
| Created: | 2023-07-07 |
| By: | Debra Andrews (marketriinfo@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAyLNolCPJtT-5tdqgP6kdhSetzhC_xpgN |

## "MSIG NA Marketing Services Agreement_2023" History

Document created by Debra Andrews (marketriinfo@gmail.com)
2023-07-07 - 2:57:05 PM GMT- IP address: 108.247.46.169

Document emailed to johan.slabbert@msig-na.com for signature
2023-07-07 - 2:57:30 PM GMT

Email viewed by johan.slabbert@msig-na.com
2023-07-07 - 3:19:54 PM GMT- IP address: 136.226.81.25

Signer johan.slabbert@msig-na.com entered name at signing as Johan Garth Slabbert
2023-07-07 - 3:20:41 PM GMT- IP address: 136.226.81.25

Document e-signed by Johan Garth Slabbert (johan.slabbert@msig-na.com)
Signature Date: 2023-07-07 - 3:20:43 PM GMT - Time Source: server- IP address: 136.226.81.25

Agreement completed.
2023-07-07 - 3:20:43 PM GMT

# *Exhibit "E"*

JEFFREY P. GARTON
DOUGLAS C. MALONEY
THOMAS J. PROFY, IV*†
FRANCIS X. DILLON
JOHN A. TORRENTE*
STEVEN M. JONES
MICHAEL J. MEGINNISS
BREANDAN Q. NEMEC*
BRENDAN M. CALLAHAN*
BRADLEY R. CORNETT*
SEAN M. GRESH
BRYCE H. McGUIGAN*
TRACY L. CASSEL-BROPHY*
CHRIS LITTLE SIMCOX*
BRENDAN G. CORRIGAN^
KIMBERLY N. BARRON
CHLOE M. BOUDAZIN
CHELSEY CROCKER JACKMAN
MARISA M. PERINI
HANNAH M. SCHWEIZER

*Member of PA & NJ Bars
†Master of Laws (Taxation)
^Member of PA & NY Bars

BEGLEY, CARLIN & MANDIO, LLP
BC &M
EST. 1933
ATTORNEYS AT LAW

680 MIDDLETOWN BOULEVARD
P.O. BOX 308
LANGHORNE, PENNSYLVANIA 19047-0308
TELEPHONE: 215.750.0110
FAX: 215.750.0954

OF COUNSEL

HON. ROBERT O. BALDI (RET.)
-Mediation and Arbitration

SCOTT A. PETRI
FRANK A. FARRY
ALLEN W. TOADVINE
TRACY P. HUNT
PAMELA A. VAN BLUNK*
KATHARINE J. WEEDER*
MARC I. RICKLES*

NEW HOPE OFFICE
123 W. BRIDGE STREET
NEW HOPE, PA 18938
215.862.0701

SEAN M. GRESH, ESQUIRE
sgresh@begleycarlin.com

January 29, 2025

VIA CERTIFIED MAIL
and ELECTRONIC MAIL
jennifer.marino@msig-na.com

Jennifer Marino
MSIG - NA
15 Independence Blvd.
PO Box 4602
Warren, NJ 07059

RE: CEASE AND DESIST

Ms. Marino:

This office represents Marketri, LLC (Marketri), your former employer. Reference is made to Section 9.2 of the Marketri Employee Handbook. Pursuant to this section, you are prohibited from, among other things assisting anyone, including in this instance MSIG-NA from employing any person, namely yourself, who is or was an employee of Marketri for a period of one (1) year from the date of your termination of employment with Marketri.

You are also prohibited from persuading any client of Marketri to cease from doing business with Marketri or reduce the amount of business any client has customarily done with Marketri.

Your acceptance of an offer of employment from your current employer MSIG – NA, which was a client that you yourself serviced while under the employ of Marketri until this week, is in direct contravention of the terms of your employment with Marketri. You must cease and desist from this offensive activity immediately. Failure to do so will result in Marketri availing itself of all legal remedies available to it.

I encourage you to share this letter with legal counsel for their review and your discussion.

Please be guided accordingly.

Very Truly Yours,
BEGLEY, CARLIN, AND MANDIO

SEAN M. GRESH

cc: Marketri, LLC (via email)

***Exhibit "F"***

marketri

# INVOICE

From

**Marketri**
1700 Market Street
Suite 1005
Philadelphia, PA 19103
866-303-6999

| | |
|---|---|
| Invoice ID | **2616** |
| Issue Date | 12/03/2024 |
| Due Date | 01/02/2025 (Net 30) |

Invoice For

**MSIG NA**
15 Independence Blvd., P.O. Box 4602
Warren, NJ 07059

| Item Type | Description | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| Service | Marketing Services: December 2024 | 1.00 | $50,000.00 | **$50,000.00** |
| Service | Website maintenance, security and plug-in updates: December 2024 | 1.00 | $1,500.00 | **$1,500.00** |
| Service | SharePoint Redesign and Development (payment 1 of 2) | 1.00 | $10,000.00 | **$10,000.00** |
| Reimbursement - Marketing | Holiday card printing | 1.00 | $183.00 | **$183.00** |

**Amount Due** **$61,683.00**

**Notes**

Terms: Net 30 You are welcome to pay by electronic bank transfer (banking information can be provided), MasterCard / Visa, or check.

Please remit payment to:
1700 Market Street
Suite 1005
Philadelphia, PA 19103

Banking information for ACH:
Account: Marketri LLC, Routing # [redacted], Account # [redacted]

If you wish to pay through PayPal, please let us know in advance at billing@marketri.com. Any PayPal payments will incur a 4% fee of your total invoice amount. We can either attach the fee to your current invoice to be paid or send as a separate transaction.

marketri

# INVOICE

From

**Marketri**
1700 Market Street
Suite 1005
Philadelphia, PA 19103
866-303-6999

| | |
|---|---|
| Invoice ID | **2640** |
| Issue Date | 01/03/2025 |
| Due Date | 02/02/2025 (Net 30) |

Invoice For

**MSIG NA**
15 Independence Blvd., P.O. Box 4602
Warren, NJ 07059

| Item Type | Description | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| Service | SharePoint Redesign and Development (payment 2 of 2) | 1.00 | $13,000.00 | **$13,000.00** |
| Reimbursement - Travel | Jen Marino airfare | 1.00 | $785.00 | **$785.00** |

**Amount Due** **$13,785.00**

**Notes**

Terms: Net 30 You are welcome to pay by electronic bank transfer (banking information can be provided), MasterCard / Visa, or check.

Please remit payment to:
1700 Market Street
Suite 1005
Philadelphia, PA 19103

Banking information for ACH:
Account: Marketri LLC, Routing # [redacted], Account # [redacted]

If you wish to pay through PayPal, please let us know in advance at billing@marketri.com. Any PayPal payments will incur a 4% fee of your total invoice amount. We can either attach the fee to your current invoice to be paid or send as a separate transaction.