IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARKETRI, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MSIG INSURANCE SERVICES, INC. | : | NO. 25-889 |
| d/b/a MSIG NA, et al. | : | |

MEMORANDUM

Bartle, J.                                                  March 25, 2025

        Before the court is the motion of plaintiff Marketri,
LLC ("Marketri") for a preliminary injunction against defendant
MSIG Insurance Services, Inc. ("MSIG") and defendant Jennifer
Marino ("Marino").  Marketri, in its complaint, claims that
MSIG, a former client, breached the non-solicitation provision
of their Marketing Services Agreement in hiring Marino, a former
Marketri employee, and that Marino breached her employment
agreement with Marketri in going to work for MSIG.  Subject
matter jurisdiction is grounded in diversity of citizenship
under 28 U.S.C. § 1332(a).  The parties agreed to forego
discovery.

        The court held an evidentiary hearing on the motion
and now makes the following findings of fact and conclusions of
law.

I.

To obtain a preliminary injunction, a moving party must establish: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 176 (3d Cir. 2017). The district court must also consider, when relevant, "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." <u>Id.</u> The first factor requires that the moving party only make a "showing significantly better than negligible" that it can win on the merits. <u>Id.</u> at 179. It does not have to establish that its ultimate success is "more likely than not." <u>Id.</u> As for the second factor, the moving party must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." <u>Id.</u>

Once the moving party meets the threshold for the first two factors, the court must balance all four factors in deciding whether to grant a preliminary injunction. <u>Id.</u> at 176. "District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" <u>Id.</u> at 178-179 (quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008)).

2

II.

Marketri, LLC is a limited liability company formed
under Pennsylvania law by Debra Andrews, its sole member and its
chief executive officer.  Although Andrews formerly lived in
Pennsylvania, she has resided in Maryland for the last four
years.

Marketri provides marketing services for its corporate
clients.  These services range from content creation to high-
level marketing strategy and consulting.  Marketri is a
"virtual" business.  It has no physical headquarters but does
maintain an office in Philadelphia.  While no Marketri employees
work there, the office serves as a place where its mail is
delivered and picked up by a third-party contractor which then
forwards it to Andrews.  The third party also staffs the office
to answer phone calls to Marketri.  It then redirects the calls
to specific Marketri employees in other locations.  Marketri's
employees, as well as its clientele, are situated throughout the
country.  Marketri's employees travel to conduct face-to-face
business with clients, but the lion's share of Marketri's work
is performed remotely.

Andrews first hired defendant Jennifer Marino as a
part-time independent contractor in September 2021.  In December
2022, Marino joined Marketri as a full-time fractional Chief
Marketing Officer.  In that role, she acted in effect as the in-

3

house Chief Marketing Officer for Marketri's clients for which she was responsible.  Marino has always lived in and worked for Marketri out of her home in Massachusetts, although from time to time she visited clients in person in other locations.

During her time as fractional CMO at Marketri, Marino was an experienced and valuable member of the team.  She helped to develop Marketri's proprietary "best standards and practices," which Marketri's employees follow in serving their clients.  She also assisted with developing Marketri's strategies and templates regarding generative AI, a rapidly evolving field that has the potential to transform the marketing industry.  Given Marino's skill, experience, and value to Marketri, Andrews had considered stepping down in the coming years from her role as CEO and having Marino take her place.

Marino had responsibility for a number of clients while at Marketri including MSIG, an insurance company.  MSIG, which is incorporated in New York with its headquarters in New Jersey, was a client of Marketri before Marino's tenure began. It was one of Marketri's biggest clients paying Marketri $50,000 per month in 2024.

As time went on, Marino expressed some discontent to Andrews about her role at Marketri.  She wanted a more strategic position and inquired about receiving some equity in the company.  At one point, to demonstrate that other employers were

willing to hire her, Marino forwarded to Andrews an offer she
had received for a CEO position at another company although she
did not accept it.  In the late summer of 2024, she decided that
she would leave Marketri and began searching for another
position.  She did not inform Andrews of her intention at that
point.

        At about the same time, Peter McKenna, the CEO of
MSIG, expressed to Marino that MSIG was considering hiring an
in-house Chief Marketing Officer rather than continuing to
contract with Marketri.  McKenna assured Marino this change in
direction was based solely on fiscal concerns and did not
reflect poorly on Marino's performance.  McKenna asked Marino
if, given her experience in the insurance marketing field, she
had any recommendations for a potential CMO.  Marino then took
the initiative and asked to be considered for the position.
McKenna was surprised as he thought, wrongfully as it turned
out, that she was one of the owners of Marketri.

        Marino and McKenna for several months continued to
discuss the possibility of Marino joining MSIG.  Marino also
pursued opportunities with other potential employers who were
not clients of Marketri.  Marino did not inform Andrews of any
of these discussions.  Nor did she tell Andrews that MSIG was
considering ending its contractual relationship with Marketri.
On December 20, 2024, Marino accepted an offer to become MSIG's

CMO.  Sometime between December 26 and December 29, 2024, she informed Andrews of her decision.  Marino ended her full-time tenure with Marketri on January 17, 2025.[1]  At the time, Marketri was paying her a salary of $287,000.  The following Monday, January 20, Marino began working as CMO at MSIG where she is currently employed.  MSIG no longer has a contract with Marketri.

Marketri and MSIG had entered into a Marketing Services Agreement in July 2023.  The agreement contains a Non-Solicitation clause which provides in relevant part:

> Client [MSIG] agrees that during the Term
> and for a period of two (2) years
> thereafter, Client shall not directly or
> indirectly solicit employees . . . of
> Marketri for Client's own benefit. . . .

The Non-Solicitation clause provides for liquidated damages. MSIG was required to compensate Marketri at "one and one-half (1.5) times the yearly compensation paid by Marketri to the solicited employee . . . during the fiscal year directly prior to said solicitation."

The agreement also contains a Jurisdiction and Dispute provision:

> This Agreement shall be governed in
> accordance with the laws of the Commonwealth
> of Pennsylvania.  All disputes under this
> Agreement shall be resolved by litigation in

---

[1] Though Marino continued to perform hourly work for Marketri until the end of the month.

> the courts of the Commonwealth of
> Pennsylvania including federal courts
> therein and the Parties all consent to the
> jurisdiction of such courts, agree to accept
> service of process by mail, and hereby waive
> any jurisdictional or venue defenses
> otherwise available to it.

Marino had previously signed an employment agreement with Marketri on November 6, 2022, effective upon joining Marketri as a full-time employee on December 1, 2022. It includes both a Confidential Information clause and a Non-Competition clause. The Confidential Information clause recognized that she would have access to "certain proprietary and confidential information." She agreed:

> not to use, disclose or divulge, directly or
> indirectly, and [sic] Confidential
> Information during the term of this
> Agreement or at any time thereafter other
> than in connection with performing
> Employee's services for the Company.
> Employee further agrees he will not use any
> such Confidential Information, directly or
> indirectly, in competition with Company at
> any time during the term of this Agreement
> or at any time thereafter.

The Non-Competition clause reads in relevant part:

> Employee agrees that, during the term of her
> employment and for a period of two (2) years
> thereafter, Employee will not directly or
> indirectly . . . enter into a contractual
> relationship with a client of Employer to perform
> the type of services, or services similar in
> nature to that which was provided by Employee to
> Employer during Employee's term of employment.

The employment agreement contains a choice-of-law provision: "This agreement is made in the Commonwealth of Pennsylvania and is to be construed and enforced according to its laws."

While Marino does not recall signing the document, it bears her signature.  She conceded that there was no reason to doubt its authenticity.

III.

Marketri first seeks a preliminary injunction against MSIG on the ground that MSIG in hiring Marino has breached the Non-Solicitation provision of their Marketing Services Agreement.

The agreement simply provides that MSIG "agrees that during the Term and for a period of two (2) years thereafter client [MSIG] shall not directly or indirectly solicit employees . . . of Marketri for Client's [MSIG's] own benefit" (emphasis added).  Plaintiff has not proven that MSIG solicited Marino to become its employee.  Instead, the evidence establishes that it was Marino, and not Peter McKenna of MSIG, who initiated the inquiry about her becoming an employee of MSIG.

Black's Law Dictionary defines solicitation as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition" and "[a]n attempt or effort to gain business."  Solicitation, Black's Law Dictionary (12th ed.

8

2024).  What happened here cannot be construed as MSIG's
solicitation of Marino.  On the contrary, it was Marino who was
doing the soliciting.  The court will not rewrite the words
chosen by two sophisticated commercial parties and insert a
blanket prohibition against the hiring of Marketri's employees
by MSIG.  Since MSIG never solicited Marino to become an
employee, MSIG has not violated the Marketing Services
Agreement.  Accordingly, Marketri is not entitled to a
preliminary injunction against MSIG as Marketri has not
demonstrated that it has a significantly better than negligible
chance to succeed on the merits.  See Reilly, 858 F.3d at 179.

IV.

Marketri also seeks a preliminary injunction against
Marino on the ground that she breached her employment agreement
by serving as the Chief Marketing Officer of its client, MSIG.
The court must first decide what law governs.  Marketri argues
that the employment agreement is controlled by Pennsylvania law
while Marino maintains that it is controlled by Massachusetts
law.  There is a true conflict between the law of those two
states.  See Melmark, Inc. v. Schutt, 206 A.3d 1096, 1104 (Pa.
2019).

While Pennsylvania law does not favor restrictive
covenants such as non-competition agreements, it does sanction
them when non-competition covenants are "incident to an

9

employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." Hess v. Gebhard & Co. Inc., 808 A.2d 912, 917 (Pa. 2002).  Under Pennsylvania law, the court may "blue pencil" or modify a restrictive covenant so as to enforce it only to the extent reasonably necessary to protect the employer's legitimate business interests.  See Hess, 808 A.2d at 920; PharMethod, Inc. v. Caserta, 382 F. App'x 214, 220 (3d Cir. 2010).

In contrast, Massachusetts has a Noncompetition Agreement Act ("MNAA"), which puts significant limitations on non-competition clauses in employment agreements.  Mass. Gen. Laws. Ann. 149, § 24L.  The MNAA provides that to be valid and enforceable, a non-competition agreement must contain a garden leave clause or other mutually-agreed upon consideration between the employer and the employee, specified in the agreement.  Id. § 24L(b)(vii).  A "garden leave clause" is a "provision within a noncompetition agreement by which an employer agrees to pay the employee" during the period of time during which the employee is restricted by the non-competition agreement.  Id. § 24L(a). Pennsylvania has no garden leave law, and the employment agreement here did not contain such a provision.  Non-competition agreements in Massachusetts generally may not exceed

10

one year.  Id. § 24L(b)(iv).  There is no such limitation in
Pennsylvania.

A federal court in a diversity action applies the
choice of law rules of the state in which it sits, in this case
the choice of law rules of Pennsylvania.  Klaxon Co. v. Stentor
Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Pennsylvania
"generally honor[s] the intent of the contracting parties and
enforce[s] the choice of law provisions in contracts executed by
them."  Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d
Cir. 1994).  While that general rule is not absolute,
"Pennsylvania courts will only ignore a contractual choice of
law provision if that provision conflicts with strong public
policy interests."  Id. at 56.  Pennsylvania courts have adopted
§ 187 of the Second Restatement of Conflict of Laws.  Id. at 55.
Section 187(2) of the Restatement provides:

> The law of the state chosen by the parties
> to govern their contractual rights and
> duties will be applied, even if the
> particular issue is one which the parties
> could not have resolved by an explicit
> provision in their agreement directed to
> that issue, unless either
>      (a)  the chosen state has no
> substantial relationship to the parties or
> the transaction and there is no other
> reasonable basis for the parties' choice, or
>      (b)  application of the law of the
> chosen state would be contrary to a
> fundamental policy of a state which has a
> materially greater interest than the chosen
> state in the determination of the particular
> issue and which, under the rule of § 188,

        would be the state of the applicable law in
        the absence of an effective choice of law by
        the parties.

Here the parties chose Pennsylvania law.  As previously noted,

the employment agreement states it was made in Pennsylvania and

is to be construed and enforced according to its laws.  The

selection of Pennsylvania law is reasonable as the contract was

made in this Commonwealth, Marketri was organized in this

Commonwealth, and Marketri has an office in Philadelphia.

        The court must next determine whether the application

of Pennsylvania law meets the requirements under Section

187(2)(b).  For present purposes, the court will assume that

Massachusetts as well as Pennsylvania has a fundamental policy

with respect to the non-competition provisions of employment

agreements.  The court turns to the issue of whether

Massachusetts has a materially greater interest than

Pennsylvania on this issue, that is whether the contractual

choice of Pennsylvania law conflicts with strong public policy

interests.  Kruzits, 40 F.3d at 56.

        Our Court of Appeals in Coface Collections North

America, Inc. v. Newton, 430 F. App'x 162 (3d Cir. 2011), faced

a set of facts and choice of law issue similar to what is now

before this court.  There, the Court applied § 187(2)(b) to

determine whether Louisiana or Delaware would apply to a non-

competition clause between an employee based in Louisiana and a

12

corporation incorporated in Delaware and conducting business nationally.  The court acknowledged that Louisiana indeed had a substantial interest in the matter because the Louisiana employee was a Louisiana citizen, signed his employment agreement in Louisiana, and worked in Louisiana.  Id. at 168.  Nonetheless, the court upheld the grant of a preliminary injunction under Delaware law.  Id.  It reasoned that the interest of Delaware was substantial and prevailed in allowing its corporations to enforce their choice of law, particularly when their business involves commercial relationships that "do not center in any material matter on the geography of any particular party's operational headquarters."  Id. (quoting Abry Partners V. L.P. v. F&W Acquisition LLC, 891 A.2d 1032, 1049-50 (Del. Ch. 2006).

        The situation is no different here.  Massachusetts certainly has an interest in protecting Marino, one of its residents.  Pennsylvania, however, has a substantially greater interest in the application of its own law.  Marketri was formed in Pennsylvania, and the employment agreement in issue was made here.  Marketri does most of its business virtually and has employees and clients throughout the country.  The application of Pennsylvania law promotes Marketri's business and its commercial relationships by sparing it and the parties with which it contracts from the time, the expense, and the

13

uncertainty of litigating what state law might govern in a particular situation. It is clearly in the strong public policy interest of Pennsylvania for its businesses to contract for the uniform application of its law "rather than [to be governed by] the laws of each and every state" where they employ workers. Kruzits, 40 F.3d at 56. In short, Massachusetts does not have a materially greater interest than Pennsylvania. Accordingly, Pennsylvania law, the law chosen by the parties, controls.

There can be no question that Marino has breached the terms of her employment agreement under Pennsylvania law in going to work for MSIG, one of Marketri's clients. As noted, the employment agreement states in relevant part:

> Employee agrees that during the term of her employment and for a period of two (2) years thereafter, employee will not directly or indirectly . . . enter into a contractual relationship with a client of Employer to perform the type of services, or services similar in nature to that which was provided by Employee to Employer during Employee's term of employment.

The contract was incident to the employment relationship of the parties and a non-competition clause is reasonably necessary to protect Marketri. Marketri has established that it will be irreparably harmed if Marino is able to continue her employment with MSIG. Marino was a highly paid key employee of Marketri. Marketri is in the business of providing a full range of marketing services to its clients. If

14

a fractional Chief Marketing Officer leaves and works for a
client, Marketri not only loses a key employee but also the
client since its services will no longer be needed.  Key
employees like Marino have access to significant confidential
and proprietary information.  Marketri's business model depends
on companies hiring Marketri to stand in the place of an in-
house marketing department.  If Marketri loses its employees to
those same companies, that business model collapses.

        Nonetheless, the temporal restriction, two years from
the date of Marino's departure from Marketri, is not reasonably
limited.  It goes beyond what is necessary to protect Marketri
and unduly restricts Marino's employment opportunities.
According to Andrews, the world of marketing is rapidly changing
as a result of artificial intelligence.  Furthermore, the court
sees little detriment to Marketri's business model in
restricting employees for a year as opposed to restricting them
for two years.  Either way, the message to clients and employees
alike is clear that there are limitations on Marketri's
employees going to work for its clients so as to prevent
undermining of Marketri's business.  A one year limitation
fairly protects Marketri while not unduly limiting Marino in her
quest for other employment.

        The court will therefore exercise its discretionary
power to "blue pencil" the restrictive covenant and reduce the

temporal scope from two years to one year, beginning with the
date that defendant Marino went to work for MSIG, that is
January 20, 2025.  The restrictive covenant will be in effect
until January 19, 2026.

The court has found that Marketri is likely to succeed
on the merits and that Marketri is being irreparably harmed by
Marino's employment as a marketing officer with MSIG.
Accordingly, the court must now consider whether the harm to
Marketri in not granting a preliminary injunction outweighs the
harm to Marino if a preliminary injunction issues.  The court
must also weigh the public interest.  Reilly, 858 F.3d at 176.

While Marino will no longer be able to work for MSIG,
she has significant experience and talent in marketing.  She has
previously received an offer to become the CEO of another
company and that a number of other potential employers have
expressed interest in hiring her.  There is no geographical
limitations in the non-competition provision of her employment
agreement.  She is simply restricted from working for one of
Marketri's clients.  The harm to Marketri if the employment
agreement is not enforced transcends the harm to Marino if it is
enforced.

Finally, the public interest is served by the entry of
a preliminary injunction.  The public interest is promoted by
the enforcement of conscionable and reasonable contracts.

Balancing all the required factors, the court will grant a preliminary injunction for a one-year period in favor of plaintiff Marketri, LLC and against defendant Jennifer Marino.